IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| **MEAKA ANNE KNIGHT,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 21-3223 |
| ) | |
| **THE POINTE OF JACKSONVILLE, LLC,** ) | |
| ) | |
| Defendant. ) | |

**OPINION**

**SUE E. MYERSCOUGH, United States District Judge:**

Before the Court is Defendant The Pointe of Jacksonville, LLC's Motion to Dismiss under Rule 12(b)(6) [Doc. 9]. For the reasons that follow, the Defendant's Motion to Dismiss is denied.

### I. TIMELINESS OF LAWSUIT

In support of the motion to dismiss, the Defendant first alleges Pro Se Plaintiff Meaka Anne Knight did not file her Complaint within 90 days of when she claims she received the EEOC's right to sue letter. Doc. 9, at 1. The Plaintiff's original, unsigned complaint was filed on October 19, 2021. See d/e 1. In her Amended Complaint, the Plaintiff alleges she received her notice of right to sue letter on

1

July 20, 2021.  See d/e 5, at 5.  Because 91 days elapsed between July 20 and October 19, 2021, the Defendant contends the Plaintiff's complaint must be dismissed because suit was not filed within 90 days of the receipt of the letter as is required under 42 U.S.C. § 2000e-5(e)(1) & (f)(1).  See d/e 9, at 2.

The Court notes that after filing the original complaint, the Plaintiff filed as an exhibit the EEOC's Dismissal and Notice of Suit Rights.  See d/e 2.  The Notice of Suit Rights indicates that the document was issued on July 20, 2021, signed the same day by the District Director, and sent from the Chicago District Office to the Plaintiff in Jacksonville.  Id. at 1.  Presumably, the Plaintiff did not receive the Notice of Suit Rights on the same day it was sent.  It was likely received on a date after July 20, 2021, and thus within 90 days of the filing of the Plaintiff's complaint.  There is at least some uncertainty at this stage as to whether the notice was received by the Plaintiff on July 20, 2021, or a date thereafter.  Accordingly, the Court declines to dismiss the Plaintiff's complaint on the basis that more than day 90 days elapsed between receipt of the notice and the filing of the complaint.

## II. MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

The Defendant also contends the Plaintiff's Amended Complaint must be dismissed for failure to state a claim upon which relief can be granted, claiming that the Amended Complaint does not include any factual allegations in support of her claim that she was terminated and retaliated against due to a disability. See d/e 9, at 3.

### A. Factual Allegations

In her Amended Complaint, the Plaintiff states that she started working as the Activity Director at The Pointe of Jacksonville on February 11, 2020. See d/e 5-1, at 1. That same date, the Plaintiff had orientation with Sara Foster, the Defendant's Regional Executive Director. Id.

The Plaintiff states that, on April 6, 2020, she forgot to take her medication before reporting to work. Id. The Plaintiff's boyfriend brought in Plaintiff's three prescriptions for anxiety, depression, and ADHD. Id. When the Plaintiff left work on April 6, 2020, Plaintiff forgot that she had left the medications in bags stapled together in her locked office that only three other employees could access. Id. at

3

2. Foster, Peg Spears, the Regional Director of Marketing, and a maintenance supervisor were able to access the Plaintiff's office. Id. Plaintiff claims that, until then, her job had been going well and she had received no complaints from management, co-workers, or residents at The Pointe. Id.

The Plaintiff alleges that, when she reported to her office on the morning of April 7, 2020, the office door was open. Id. Peg Spears, the Regional Director of Marketing, was sitting at Plaintiff's desk working on a calendar program the two had not been able to figure out. Id. The Plaintiff states that she went to grab her medicine when she noticed that the prescription for Adderall was missing. Id. The Plaintiff alleges she told Spears that the medicine was for her ADHD and she "would be all over the place without it." Id. The Plaintiff further claims that Spears informed her that Sara Foster was out of the office for the day. Id. Spears advised Plaintiff that she would tell Foster about the missing medication so that Foster could watch the security videos, which could be done from home. Id.

The Plaintiff alleges that, on April 9, 2020, she texted Foster to inquire about her missing medicine and got no response. Id. Plaintiff

informed Foster she would be "scatterbrained" without the medication and wanted it so that she could maintain focus. Id.

The Plaintiff next claims that, when she went in to work on April 11, a Saturday, Plaintiff received a message from Foster asking why she was at work. Id. Plaintiff alleges she had never been questioned before about working on Saturday. Id.

When the Plaintiff reported to work on April 13, 2020, Plaintiff alleges she was screened for COVID-19 and asked if she had any COVID symptoms. Id. at 3. The Plaintiff proceeded to work following the screening. Id. The Plaintiff states she was in a meeting at approximately 9:30 a.m. when she coughed[1] twice and was immediately sent home by Foster. Id.

The Plaintiff alleges that, on April 16, 2020, she had a remote appointment with a physician, who released her back to work on April 17, 2020. Id. On April 17, 2020, Foster informed the Plaintiff that she could not come in over the weekend to make up hours she had missed that week after being sent home on April 13. Id. Foster

---

[1] The Amended Complaint states that Plaintiff "caught twice." The Court presumes Plaintiff intended to write "cough" instead of "caught."

told the Plaintiff to take the weekend off and her sick time should cover the days she was off. Id.

The Plaintiff alleges that, on or about April 20, 2020, Plaintiff had a slight fever when she reported to work but no other COVID symptoms. Id. The Plaintiff remained off work for one week. Id. On April 27, 2020, the Plaintiff asked Foster if she could return to work the following day. Id. Foster advised Plaintiff that she would need a doctor's release to return to work. A doctor released the Plaintiff to return to work the following day. Id.

The Plaintiff next alleges that, on April 28, 2020, Plaintiff learned that a neighbor with whom she had contact the previous day had tested positive for COVID-19. Id. The Plaintiff claims that, because of the limited nature of the contact, the Morgan County Health Department informed Plaintiff that she had not been exposed to COVID-19 and did not have to quarantine. Id. The Plaintiff further contends that, during her phone conversation with the health department, Plaintiff received a text message from Cindy Jones, the office manager at The Pointe, informing Plaintiff that Foster had advised that Plaintiff was not to come to work and needed to

6

quarantine at home for 14 days. Id. When the Plaintiff was unable to reach Foster by phone, Plaintiff sent Foster a text message stating that the health department had said she was not exposed to Covid-19 and could return to work. Id. Foster advised the Plaintiff that it was Foster's decision to make and Plaintiff was to quarantine at home for 14 days. Id. at 4. The Plaintiff was told she would need a doctor's note to return to work in two weeks. Id.

On May 14, 2020, following a remote doctor's appointment, the Plaintiff and Foster received a note from the doctor. Id. Foster advised Plaintiff that, because she had not been tested for COVID-19, she should go to the drive-through clinic at the health department. Id. The Plaintiff took a COVID-19 test on May 17, 2020, and she learned the following day that the test was negative. Id. On May 18, 2020, the health department also faxed a copy of the test result to Foster who claimed she did not receive it. Id. The health department again sent the fax the following day. Id. On May 20, 2020, the Plaintiff returned to work. Id.

The Plaintiff states that she worked a full day on May 21, 2020. Id. The Plaintiff claims she asked Foster to verify her employment,

but Foster would not do so. Id. That same day, Plaintiff claims she learned from a co-worker that her position had been posted on the Indeed.com website, which Plaintiff later confirmed. Id. When the Plaintiff asked Foster about the posting, the Plaintiff was told that her job had not been posted by The Pointe and that Indeed automatically makes job postings. Id.

On May 28, 2020, the Plaintiff alleges she was called into the office where she met with Foster and Amy. Id. at 5. Plaintiff does not identify Amy by last name or position. The Plaintiff alleges she was issued two write-ups, the first of which was for working overtime on May 21, 2020, after Plaintiff had been told she could not work overtime without manager approval. Id. The Plaintiff disputes working overtime that week, stating she had not worked 40 hours because she had been off on May 18 and 19 awaiting her COVID test results. Id. The Plaintiff was also written up for being on her phone during work hours and sitting at a table less than six feet away from residents while not wearing a face mask. Id. The Plaintiff claims she does not recall sitting at a table without her face mask. Id. Plaintiff states she was not allowed to view the activity room camera to prove

her claim. Id. At the meeting, the Plaintiff claims she was also advised that her hours were no longer flexible and that her work hours would now be 8:00 to 4:30. Id.

The Plaintiff alleges that, on June 1, 2020, Plaintiff met with Amy in the activity room where Amy decided that she wanted to throw away a number of items, including furniture, arts and craft supplies, and other items. Id. at 6. The Plaintiff informed Amy she had several personal items at work—things to decorate her office, items to give residents, etc. Id. Amy advised the Plaintiff she should not have personal items at work. Id. The Plaintiff states that, as directed by Amy, she started packing her personal items that day. Id. The Plaintiff claims that, on the morning of June 2, 2020, Amy told Plaintiff there was a pile of trash in the activity room. Id. Plaintiff responded that she had personal items there, as did some of the residents. Id. The Plaintiff claims that, while on break, she attempted to go through the pile in the activity room to retrieve her belongings, at which time Foster and Amy told Plaintiff she needed to find something else to do with her time and that the pile was all trash. Id.

The Plaintiff alleges that, later that day, she was told by residents that Foster and Amy had been going through her belongings and had taken some of the items. Id. The Plaintiff claims that Foster and Amy told her that, because not all the items were hers, Plaintiff would have to produce receipts for the items she claimed. Id. The Plaintiff informed Foster and Amy that the receipts were on her Wal Mart app on her phone. Id. The Plaintiff alleges that, as soon she sat down with her phone to produce the receipts, Foster and Amy immediately told Plaintiff she was being let go for being on her phone at work. Id. The Plaintiff further states:

> I was terminated approximately 10 days after returning to work at a time of the alleged violations[.] [T]he [P]oint took no action to counsel me on what was expected of me. I attempted to meet with upper management to meet their needs but management did not have time for me. I was unfairly treated I was bullied I was humiliated I was accused of stealing I was harassed and I was not able to do my job. They a hostile work environment before my medication came up missing I loved my job. My coworkers were friendly with me. I was back to work less than 10 days and was miserable from the 2nd day. I was told to do things and they changed their minds when I finished something, nobody had time to meet or approve the work did. I went home in tears most days. I used to eat lunch with the housekeeping supervisor and her staff I ended up eating alone or taking breaks alone.

Id. at 7. The Defendant moves to dismiss on the basis that Plaintiff's Amended Complaint does not state a claim upon which relief can be granted.

### B. Legal standard

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint. See Christensen v. Cnty. of Boone, Ill., 483 F.3d 454, 458 (7th Cir. 2007). To state a claim for relief, a plaintiff need only provide a short and plain statement of the claim showing she is entitled to relief and giving the defendants fair notice of the claims. See Tamayo v. Blagojevich, 526 F.3d 1074, 1081 (7th Cir. 2008).

When considering a motion to dismiss under Rule 12(b)(6), the Court construes the complaint in the light most favorable to the plaintiff, accepting all well-pleaded allegations as true and construing all reasonable inferences in plaintiff's favor. See id. Pro se motions are liberally construed. See Parker v. Four Seasons Hotels, Ltd., 845 F.3d 807, 811 (7th Cir. 2017) (We "construe pro se filings liberally, and we will address any cogent arguments we are able to discern."). However, the complaint must set forth facts that plausibly demonstrate a claim for relief. See Bell Atl. Corp. v. Twombly, 550

U.S. 544, 547 (2007). A plausible claim is one that alleges factual content from which the Court can reasonably infer that the defendants are liable for the misconduct alleged. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Merely reciting the elements of a cause of action or supporting claims with conclusory statements is insufficient to state a cause of action. See id.

C. **ADA claim**

In the Amended Complaint, the Plaintiff alleges that she was terminated because of her disability or perceived disability of ADHD or COVID-19. See d/e 5, at 4. To establish an ADA discrimination claim, a plaintiff must show that she: (1) was disabled within the meaning of the ADA; (2) was qualified to perform the essential functions of the relevant job with or without a reasonable accommodation; and (3) suffered an adverse employment decision because of her disability. See Sandefur v. Dart, 979 F.3d 1145, 1151 (7th Cir. 2020). To establish causation, a plaintiff "must show that her employer would not have fired her but for her actual or perceived disability." McCann v. Badger Mining Corp., 965 F.3d 578, 588 (7th Cir. 2020).

For purposes of this motion, the Court will assume that ADHD and COVID-19 constitute disabilities under the ADA. Given that Plaintiff was hired for her position less than four months before she was terminated, Plaintiff can likely establish she was qualified to perform the essential functions of her job with or without a reasonable accommodation. Therefore, the issue becomes whether Plaintiff has plausibly alleged that she was terminated because of her disability.

The *Pro Se* Amended Complaint is not a model of clarity. However, the Plaintiff does allege that her job was going well for the first two months until other employees—including at least one of the decisionmakers—potentially discovered that Plaintiff took medication for ADHD, in addition to depression and anxiety. See d/e 5-1, at 2. The Plaintiff alleges that everything changed after the discovery of her prescription medication until her eventual termination nearly two months later. Id. On April 11, 2020, two days after the Plaintiff inquired of Foster about the missing medication, Plaintiff was questioned about why she was working on a Saturday. Id. The Plaintiff then missed most of the next five weeks due to either COVID-

19 symptoms or because she had close contact with someone who had tested positive for COVID-19. Id. at 3-4. The Plaintiff returned to work on May 20, 2020. Id. at 4. The following day, the Plaintiff was unable to obtain verification of her employment and was told by another employee that her job had been posted on Indeed, which Plaintiff soon confirmed. Id.

Based on the apparent discovery of the Plaintiff's medication and what transpired after the Plaintiff returned to work on May 20, 2020, a reasonable inference from the Plaintiff's statement of claim is that the termination decision had been made no later than May 21, 2020, and that the June 2, 2020, asserted reason for Plaintiff's termination of being on the phone during work hours was a pretext. Upon accepting the Plaintiff's allegations as true and drawing all reasonable inferences in Plaintiff's favor and considering Plaintiff's pro se status, therefore, the Court finds that Plaintiff has plausibly alleged she was terminated because of her alleged disability in violation of the ADA.

For all these reasons, the Defendant's Motion to Dismiss under Rule 12(b)(6) [d/e 9] is DENIED.

The Defendant is DIRECTED answer the Amended Complaint within 14 days of the entry of this Order.

ENTER: February 2, 2023

/s/ *Sue E. Myerscough*
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE